# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

HILLIARD TOI CLIATT,

       Plaintiff,

    v.

UNITED STATES OF AMERICA,
LAWRENCE GUERRA, individually,
and SIX UNKNOWN FBI AGENTS,

       Defendants.

Civil Action

File No. _____

**JURY TRIAL DEMANDED**
**(as to *Bivens* claims)**

## COMPLAINT

Plaintiff Hilliard Toi Cliatt brings this Complaint seeking damages against Defendants for entering his home in the dead of night with a battering ram, setting off flash bang grenades once inside, and holding him and his family at gunpoint for approximately an hour while purporting to execute a no-knock warrant.

The problem is that the officers were at the wrong home. Defendant United States should be held liable under the Federal Tort Claims Act and the Individual Defendants should be held liable under *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971).

## JURISDICTION AND VENUE

1.     This Court has original jurisdiction over Plaintiff's federal civil rights claims pursuant to 28 U.S.C. §§ 1331, 1343, 1346. The Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

2.     Venue is appropriate in this district pursuant to 28 U.S.C. § 1391 because the cause of action arose herein.

## CONDITIONS PRECEDENT

3.     All conditions precedent to this lawsuit, if any, have been satisfied or waived.

4.     Plaintiff provided Defendant United States' Federal Bureau of Investigation (FBI) detailed tort claims notices on October 25, 2018.

## PARTIES

5.     Plaintiff Hilliard Toi Cliatt is a resident of Georgia and at all times during the incident that is the subject of this Complaint, he was a resident of Fulton County, Georgia.

6.     Defendant United States has waived any sovereign immunity to the claims against it in this lawsuit through the Federal Tort Claims Act.

7.     Defendant Lawrence Guerra was a Special Agent for the FBI's Atlanta office during the incident that is the subject of this Complaint.

8.    The Unknown Defendants were FBI Agents who worked for the FBI's Atlanta office during the incident that is the subject of this Complaint.

## FACTUAL ALLEGATIONS

9.    In the early morning hours of Wednesday, October 18, 2017, at approximately 4:00-4:30 am, Curtrina Martin, her minor child, G.W., and Toi Cliatt, were awoken when an unknown number of FBI agents executed a no-knock warrant at their home at 3756 Denville Trace, SW, Atlanta, Georgia, 30331.

10.    However, the FBI agents were at the wrong house.

11.    The intended target for the warrant was 3741 Landau Lane, SW, Atlanta, Georgia 30331, as indicated on the warrant.

12.    The FBI agents went to the wrong house number and were on the wrong street.

13.    The FBI agents did not verify that they were at the correct house number or that they were on the correct street prior to entering the home.

14.    The FBI agents did not identify themselves as FBI agents immediately or otherwise in a timely fashion.

15.    The agents rammed in the front door of the Plaintiff's home, set off flash bang grenades and were dressed in SWAT-style gear including facemasks.

16.    Cliatt was terrified and believed that his family was being victimized by an armed home invasion.

17.    Cliatt could perceive that Martin was terrified and in fear for her life.

18.    As Martin scrambled out of bed intending to reach her child, G.W., Cliatt grabbed her by the arm and pulled her towards the master bathroom connected to their bedroom.

19.    Martin was screaming "no – I have to get [G.W.]," but Cliatt pulled her through the bathroom into the adjacent closet and closed the door. She kept repeating that she had to get her child.

20.    Cliatt took her to the closet because that is where he keeps his shotgun – he planned on defending them against the unknown invaders.

21.    Luckily, the agents opened the closet doors before Cliatt reached his firearm.

22.    As the agents opened the closet door, Martin fell into a corner in the closet.

23.    Martin and Cliatt faced an unknown man wearing a mask and pointing a gun in her face. The masked man repeatedly ordered her to keep her hands up.

24.    The agent with a gun on Martin and Cliatt did not immediately

identify himself as law enforcement and neither did the other agents.

25.    The agents dragged Cliatt out of the closet, forced him onto the floor of the bathroom, and handcuffed him behind his back. Several agents circled him with their guns aimed at him.

26.    The agents eventually announced that they were "FBI," but at no time did they announce their intentions.

27.    An agent held Martin at gunpoint in the corner of the closet for approximately one hour.

28.    Cliatt was also held at gunpoint for an extended period of time.

29.    Martin pleaded with the agent to see that her child was safe, but the agent simply responded to keep her hands in the air.

30.    G.W. was seven years old at the time of the incident.

31.    G.W.'s room was across the hall from Martin and Cliatt's master bedroom.

32.    G.W. woke up terrified from the sounds of ramming the door open and the loud bangs from the flash grenades.

33.    G.W. pulled the covers over his head hoping whoever was busting into the home would not see him.

34.    G.W. was so afraid that he thought he was going to die.

35.    An agent detained G.W. apart from his mother for approximately

one hour.

36.    Cliatt had no idea why the agents were in his family's home.

37.    Eventually, one of the agents asked Cliatt the address of the home.

38.    Cliatt told them his address, which was not the address on the warrant.

39.    At that point, the agents who were holding Martin and Cliatt at gunpoint permitted them to get up off the floor.

40.    The agents then quickly left and approached the correct target of the warrant.

41.    The door to Cliatt's home was knocked off its hinges, among other property damage.

42.    As a result, Cliatt was left to guard the door to his home until it could be boarded up and secured.

43.    Defendant Special Agent Lawrence Guerra later returned to the Cliatt's home and left his business card.

44.    Cliatt suffered severe emotional distress as a result of the improper execution of the warrant.

45.    Cliatt required long-term counseling to deal with the severe emotional distress stemming from the erroneous warrant execution.

46.    Cliatt has received extensive counseling since the incident.

## COUNT I: FALSE ARREST/FALSE IMPRISONMENT
### Federal Tort Claims Act
### (Against Defendant United States of America)

47.    At all times relevant to this count, the individual Defendants were acting under color of law and within the course and scope of their employment as law enforcement agents of the FBI.

48.    All of the individual Defendant FBI agents who entered Plaintiff's home were investigative or law enforcement officers, meaning any officer of the United States who is empowered by law to execute searches, to seize evidence, or to make arrests for violations of Federal law.

49.    As described above, the individual Defendants falsely imprisoned and falsely arrested Plaintiff when they detained Plaintiff without any reasonable articulable suspicion and arrested Plaintiff without probable cause.

50.    The individual Defendants' acts of false imprisonment and false arrest are wrongful torts under Georgia law. *See* O.C.G.A. §§ 51-7-20, 51-7-22.

51.    Plaintiff suffered emotional pain and suffering for which he may recover economic and compensatory damages in amounts to be determined by the enlightened conscience of the factfinder.

52.    Defendant United States of America is liable for the acts of the individual Defendants under the Federal Tort Claims Act.

## COUNT II: ASSAULT AND BATTERY
### Federal Tort Claims Act
### (Against Defendant United States of America)

53.    At all times relevant to this count, the individual Defendants were acting under color of law and within the course and scope of their employment as law enforcement agents of the FBI.

54.    All of the individual Defendant FBI agents who entered Plaintiff's home were investigative or law enforcement officers, meaning any officer of the United States who is empowered by law to execute searches, to seize evidence, or to make arrests for violations of Federal law.

55.    As described above, the individual Defendants committed acts of assault and battery against Plaintiff in holding Plaintiff at gunpoint and making unwarranted and offensive contact with his person.

56.    The individual Defendants' acts of assault and battery are wrongful torts under Georgia statutory and common law. *See* O.C.G.A. § 51-1-14; *see also Hendricks v. S. Bell Tel. & Tel. Co.*, 193 Ga. App. 264, 264-65 (1989).

57.    Plaintiff suffered emotional pain and suffering for which he may recover economic and compensatory damages in amounts to be determined by

the enlightened conscience of the factfinder.

58.    Defendant United States of America is liable for the acts of the individual Defendants under the Federal Tort Claims Act.

## COUNT III: TRESPASS AND
## INTERFERENCE WITH PRIVATE PROPERTY
### Federal Tort Claims Act
### (Against Defendant United States of America)

59.    At all times relevant to this count, the individual Defendants were acting under color of law and within the course and scope of their employment as law enforcement agents of the FBI.

60.    All of the individual Defendant FBI agents who entered Plaintiff's home were investigative or law enforcement officers, meaning any officer of the United States who is empowered by law to execute searches, to seize evidence, or to make arrests for violations of Federal law.

61.    As described above, the individual Defendants intentionally and unlawfully interfered with Plaintiff's enjoyment of their property.

62.    The individual Defendants' acts of trespass and interference with private property are wrongful torts under Georgia statutory and common law. *See* O.C.G.A. § 51-9-1; O.C.G.A. § *see also*, *Hendricks v. S. Bell Tel. & Tel. Co.*, 193 Ga. App. 264, 264-65 (1989).

63.    Plaintiff suffered emotional pain and suffering for which he may

recover economic and compensatory damages in amounts to be determined by the enlightened conscience of the factfinder.

64.    Plaintiff also suffered extensive property damage as a result of the actions of the Defendants.

65.    Defendant United States of America is liable for the acts of the individual Defendants under the Federal Tort Claims Act.

### COUNT IV: INTENTIONAL AND/OR NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS
### Federal Tort Claims Act
### (Against Defendant United States of America)

66.    All of the individual Defendant FBI agents who entered Plaintiff's home were investigative or law enforcement officers, meaning any officer of the United States who is empowered by law to execute searches, to seize evidence, or to make arrests for violations of Federal law.

67.    At all times relevant to this count, the individual Defendants were acting under color of law and within the course and scope of their employment as law enforcement agents of the FBI.

68.    As described above, the individual Defendants intentionally and/or negligently inflicted emotional distress upon Plaintiff through their acts of illegally entering their home with a battering ram, setting off flash grenades, and holding him at gunpoint.

69.    The individual Defendants' acts of intentional and/or negligent infliction of emotional distress are wrongful torts under Georgia law. *See Lyttle v. United States*, 867 F. Supp. 2d 1256, 1301 (M.D. Ga. 2012) (citing *Clarke v. Freeman*, 302 Ga. App. 831, 835-36 (2010)).

70.    Plaintiff suffered severe emotional pain and suffering for which he may recover economic and compensatory damages in an amount to be determined by the enlightened conscience of the factfinder.

71.    Defendant United States of America is liable for the acts of the individual Defendants under the Federal Tort Claims Act.

### COUNT V: NEGLIGENCE
**Federal Tort Claims Act
(Against Defendant United States of America)**

72.    At all times relevant to this count, the individual Defendants were acting under color of law and within the course and scope of their employment as law enforcement agents of the FBI.

73.    All of the individual Defendant FBI agents who entered Plaintiff's home were investigative or law enforcement officers, meaning any officer of the United States who is empowered by law to execute searches, to seize evidence, or to make arrests for violations of Federal law.

74.    The individual Defendants had a duty to act with reasonable care and to abide by the U.S. Constitution and follow its own practices and

procedures in executing the no-knock warrant.

75.    The individual Defendants breached this duty of care by attempting to serve the warrant at the wrong home – the home of the Plaintiff.

76.    The individual Defendant's negligent acts are wrongful torts under Georgia law. *See Lyttle v. United States*, 867 F. Supp. 2d 1256, 1301 (M.D. Ga. 2012) (citing *Corp. Prop. Inv'rs v. Milon*, 249 Ga. App. 699, 705 (2001)).

77.    Plaintiff suffered emotional pain and suffering for which he may recover economic and compensatory damages in an amount to be determined by the enlightened conscience of the factfinder.

78.    The discretionary function exemption does not apply because, *inter alia*, the FBI agents' tortious actions violated the United States Constitution.

79.    Defendant United States of America is liable for the acts of the individual Defendants under the Federal Tort Claims Act.

## COUNT VI: ILLEGAL ENTRY, DETENTION, AND FALSE ARREST
### FOURTH AMENDMENT
### (Against the Individual Defendants)

80.    At all times relevant to this count, the individual Defendants were acting under color of law and within the course and scope of their

employment as law enforcement agents of the FBI.

81.    Acting under color and authority of law, the individual Defendants violated Plaintiff's Fourth Amendment rights to be free from baseless entry into their home, detention and arrest.

82.    Defendant Guerra personally supervised the execution of the no-knock warrant.

83.    Plaintiff's home did not bear an outward resemblance to the home that was the subject of the search warrant such that it could reasonably be confused with the target of the warrant.

84.    The correct street number of both homes was prominently displayed on the mailbox outside each house.

85.    Prior to the execution of the warrant, Defendant Guerra and other individual Defendants involved in the execution of the warrant were briefed on the warrant execution; they viewed photos of the target of the warrant; they knew the address of the target of the warrant; and they reviewed a map showing the location of the target of the warrant.

86.    Plaintiff's home was not in a location in the neighborhood that would allow a law enforcement officer to confuse Plaintiff's home for the target of the execution of the search warrant. The individual Defendants entered Plaintiff's dwelling without a valid warrant for that address and

without permission and under no exigent circumstances.

87.   An objectively reasonable law enforcement officer would know that no legal circumstances existed for entry into Plaintiff's dwelling.

88.   Further, the individual Defendants had no reasonable suspicion to detain Plaintiff.

89.   An objectively reasonable law enforcement officer would know that no arguable reasonable articulable suspicion existed to detain Plaintiff.

90.   Pre-existing law gave the individual Defendants fair warning that their actions violated Plaintiff's constitutional rights. *See, e.g.*, *Hartsfield v. Lemacks*, 50 F.3d 950, 955 (11th Cir. 1995).

91.   Plaintiff is entitled to recover economic and compensatory damages for the Constitutional deprivations suffered at the hands of the Defendants in an amount to be determined by the enlightened conscience of the jury.

92.   The individual Defendants acted intentionally, willfully, maliciously and oppressively, thereby entitling Plaintiff to an award of punitive damages to be determined by the enlightened conscience of the jury.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully prays that this Court:

a. Assume jurisdiction over this action;

-14-

b. Award judgment against Defendants and for Plaintiff;

c. Award Plaintiff economic and compensatory damages for mental and emotional distress, anxiety, humiliation, and any other injury in an amount to be determined by the enlightened conscience of the factfinders;

d. Award Plaintiff punitive damages against the individual Defendants in an amount to be determined by the enlightened conscience of the jury to deter each Defendant and others from similar misconduct in the future;

e. Award Plaintiff reasonable attorneys' fees, expenses, and costs of litigation pursuant to applicable state and federal laws;

f. Award Plaintiff pre and post-judgment interest; and

g. Award Plaintiff such other relief as this Court deems just and proper.

## JURY DEMAND

Plaintiff demands a jury trial on all issues so triable.


Respectfully submitted this 17th day of September 2019,

*/s/ Zack Greenamyre*
Zack Greenamyre
Georgia Bar No. 293002

MITCHELL & SHAPIRO LLP

3490 Piedmont Road, Suite 650
Atlanta, Georgia 30305
404-812-4747
404-812-4740 (fax)
zack@mitchellshapiro.com

*Attorney for Hilliard Toi Cliatt*